20-1027-cv
*Henry v. Nassau County*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

───────────

AUGUST TERM 2020
No. 20-1027-cv

**LAMBERT HENRY,**
*Plaintiff-Appellant,*

v.

**COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, THOMAS KRUMPTER, ACTING COMMISSIONER PATRICK J. RYDER, MARC TIMPANO, LIEUTENANT, ADAM FISCHER, SERGEANT, STEPHEN TRIANO, DEPUTY SHERIFF, JEFFERY KUCHEK, DEPUTY SHERIFF, MARK SIMON, DEPUTY SHERIFF, JEFFREY TOSCANO, DEPUTY SHERIFF,**
*Defendants-Appellees,*

**JOHN DOES 1-3, JANE DOES 1-3, SAID NAMES BEING FICTITIOUS, BUT INTENDED TO DESIGNATE CERTAIN UNKNOWN EMPLOYEES OF THE COUNTY OF NASSAU IN THE PISTOL LICENSE SECTION OF THE NASSAU COUNTY POLICE DEPARTMENT,**
*Defendants.*

───────────

On Appeal from the United States District Court
for the Eastern District of New York

───────────

ARGUED: OCTOBER 14, 2020
DECIDED: JULY 26, 2021

───────────

Before:    WALKER, CARNEY, and MENASHI, *Circuit Judges.*[*]

In 2014, Nassau County confiscated the pistol license and all firearms in the possession of Plaintiff-Appellant Lambert Henry because an *ex parte* temporary order of protection had been issued against him by the Nassau County Family Court. Five months later, the temporary order of protection was dissolved and the Family Court matter was dismissed, but the County did not reinstate Henry's pistol license or return his firearms. The County then formally revoked Henry's pistol license and informed Henry that he is prohibited from possessing any firearms. Henry sued, alleging, *inter alia*, that the County violated his rights under the Second Amendment.

The district court (Hurley, J.) concluded that Henry failed to state a claim lying at the core of the Second Amendment right because he alleged only that the County had barred him from owning firearms but did not allege that the County had enacted a ban on firearm ownership for all people. Applying intermediate scrutiny, the district court held that Henry failed to state a claim for a violation of the Second Amendment. We disagree. The complaint plausibly alleges that the County did not have substantial evidence that Henry is a danger to the safety of others. Because these allegations, accepted as true, would mean that the County's actions were not substantially related to its interests in public safety and crime prevention, the complaint should not have been dismissed for failure to state a claim under intermediate scrutiny. Accordingly, we reverse the district

---

[*] Judge Ralph K. Winter, originally a member of the panel, died on December 8, 2020. Subsequently, Judge Susan L. Carney was added to the panel. *See* 2d Cir. IOP E(b).

court's dismissal of Henry's claim for a violation of the Second Amendment and remand for further proceedings consistent with this opinion.

─────────

ROBERT J. LA REDOLLA (Steven M. Lester, *on the brief*), La Redolla Lester & Associates, LLP, Garden City, New York, *for Plaintiff-Appellant*.

ROBERT F. VAN DER WAAG (Jared A. Kasschau, *on the brief*), Nassau County Attorneys, Mineola, New York, *for Defendant-Appellees*.

─────────

MENASHI, *Circuit Judge*:

In 2014, the daughter of Plaintiff-Appellant Lambert Henry commenced an *ex parte* proceeding against Henry in Nassau County Family Court. The Family Court issued a temporary order of protection against Henry that, under the policies of the Nassau County Police Department, triggered an immediate suspension of his pistol license. Members of the Nassau County Police Department subsequently arrived at Henry's residence to confiscate his pistol license. They also confiscated all firearms in Henry's possession.

Five months later, the temporary order of protection was dissolved and the Family Court matter was dismissed, but the County did not reinstate Henry's pistol license or return his firearms. The Nassau County Police Department then formally revoked Henry's pistol license and informed Henry that he is prohibited from possessing any firearms. Henry appealed the revocation. Approximately a year and a half later, Henry was informed that his

appeal was rejected based on a record of domestic incidents at his home, including allegations by his ex-wife that Henry had been violent with her; his having been the subject of other, since-dissolved orders of protection; and his failure to report to the Police Department the domestic incidents, the protective orders, and his son's diagnosis of depression and admission to a medical center, as the appeals officer understood to be required by Nassau County's Pistol License Section Handbook. Henry denied all allegations of domestic violence and included with his appeal affidavits from his daughter and ex-wife in support of the reinstatement of his pistol license and ability to possess firearms. Henry will become eligible to apply for a new pistol license in 2023, seven years after his license was suspended, but the standard for granting a new license appears to be the same as the standard under which the County revoked his existing license. In any event, Henry remains barred from owning any firearms at least until that time.

Henry filed a lawsuit against Nassau County, the Nassau County Police Department, and several officials affiliated with the Nassau County Police Department in the United States District Court for the Eastern District of New York. Henry asserted a claim against the defendants under 42 U.S.C. § 1983, alleging that the defendants violated his rights under the Second Amendment to the Constitution of the United States. Additionally, Henry asserted a claim for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). He also sought a declaratory judgment that the defendants had violated the Second Amendment and injunctive relief directing the return of his license and firearms. Henry, who is African American, further alleged that the County's firearm policies had the purpose and effect of discriminating against

minorities in violation of 42 U.S.C. § 1981. Henry sought punitive damages and legal fees from Nassau County and the Nassau County Police Department based on these claims.

The district court (Hurley, J.) granted the defendants' motion to dismiss, holding, *inter alia*, that Henry's claims did not lie at the core of the Second Amendment and therefore were subject to intermediate scrutiny because Henry did not "actually alleg[e] in his complaint that Nassau County has implemented a policy banning all firearm ownership for all people." *Henry v. Cnty. of Nassau*, 444 F. Supp. 3d 437, 447 (E.D.N.Y. 2020). Applying intermediate scrutiny, the district court concluded that Henry failed to state a claim for a violation of the Second Amendment because the County's actions were "substantially related to the important government interest of preventing domestic violence." *Id.* at 447-49. The district court also dismissed Henry's claim under § 1981, holding that Henry's allegations of discrimination were too conclusory to survive a motion to dismiss. *Id.* at 449-51. Finally, the district court dismissed Henry's claims for punitive damages and legal fees. *Id.* at 451. Henry appealed.

We reverse the district court's judgment, identifying error in its holding that Henry failed to state a claim for a violation of the Second Amendment. As an initial matter, the district court's scrutiny analysis was flawed because the Second Amendment secures an individual right to keep and bear arms; accordingly, Henry was not required to allege a complete ban on firearm ownership for all residents of Nassau County to state a claim at the core of the Second Amendment. But even assuming that intermediate scrutiny applies to Henry's claim, his complaint still states a claim for relief under the Second Amendment because the complaint plausibly alleges that the County did not have "substantial evidence" that Henry is a danger to the

5

safety of others. *N.Y. State Rifle & Pistol Ass'n v. Cuomo* (*NYSRPA*), 804 F.3d 242, 264 (2d Cir. 2015) (emphasis omitted). Because these allegations, accepted as true, would mean that the County's actions were not "substantially related" to the County's "interests in public safety and crime prevention," the complaint should not have been dismissed for failure to state a claim even if intermediate scrutiny applies. *Id.* at 261, 264.

We accordingly hold that Henry has stated a claim for a violation of the Second Amendment and reverse the district court's dismissal of Henry's claim under 42 U.S.C. § 1983 as well as his claims for declaratory and injunctive relief and for legal fees. We also reverse the district court's dismissal of Henry's *Monell* claim because the complaint alleges that the County acted pursuant to official policy. We affirm the district court's dismissal of Henry's claim under 42 U.S.C. § 1981 because Henry fails to allege specific facts supporting an inference of intentional discrimination. We also affirm the district court's dismissal of Henry's claims against the Nassau County Police Department and his claim for punitive damages. The case is remanded for further proceedings consistent with this opinion.

## BACKGROUND

### I

We review a district court's grant of a motion to dismiss *de novo*, "accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). We therefore rely on the factual allegations in Henry's third amended complaint (the "complaint") and the exhibits attached thereto. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).

On October 20, 2014, Henry's daughter Brittney commenced a case against him in Nassau County Family Court. Henry's daughter alleged that she and Henry were having a discussion when Henry blocked her from leaving a room and "put [her] in a headlock and squeezed," causing her to "fear for [her] safety." J. App'x 116. Henry, for his part, characterizes the case as arising out of an argument about his daughter's grades in school. On the same day, the Family Court issued an *ex parte* temporary order of protection against Henry, ordering Henry to "[r]efrain from … coercion or any criminal offense against Brittney Janesse Henry." *Id.* at 70. After the order issued, the Nassau County Police Department's Pistol License Section "immediately suspended [Henry's] pistol license." *Id.* at 136.

Three days after the order issued, a group of Nassau County Deputy Sheriffs arrived at Henry's home, confiscated his pistol license, and demanded that he turn over all of his firearms. These actions were taken pursuant to a policy set forth in the Nassau County Police Department's Pistol License Section Handbook, which provides that the County will "*immediately suspend* the pistol license of any licensee" who is "named as a respondent in a proceeding for the issuance of a … Temporary Order of Protection." *Id.* at 141. The licensee must surrender his "firearm(s) as well as rifles and shotguns," the Handbook explains, "until the Order expires or is vacated by the issuing court, and a thorough investigation is completed." *Id.* at 143. The County's policy purportedly follows from New York Penal Law § 400.00(11).[1]

---

[1] Under New York Penal Law § 400.00(11)(c), "[i]n any instance in which a person's license is suspended or revoked under paragraph (a) … of this

On March 12, 2015—five months after the County suspended Henry's pistol license—the temporary order of protection was dissolved and the Family Court matter was dismissed, but the County did not reinstate Henry's pistol license or return his firearms. Two months later, Henry wrote to the Pistol License Section and requested the reinstatement of his license. A year and five months after that, on

subdivision, such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered to an appropriate law enforcement agency." The County argues that this provision required the confiscation of all firearms in Henry's possession. *See* Appellees' Br. 3, 7-11. It is not obvious that the County is correct. Under paragraph (a) of § 400.00(11), "[a] license may be revoked or suspended as provided for in … section eight hundred forty-two-a of the family court act." Section 842-a of the New York Family Court Act, in turn, provides in relevant part that "[w]henever a temporary order of protection is issued pursuant to section eight hundred twenty-eight of this article … the court shall where the court finds a substantial risk that the respondent may use or threaten to use a firearm, rifle or shotgun unlawfully against the person or persons for whose protection the temporary order of protection is issued, suspend any such existing [pistol] license possessed by the respondent, order the respondent ineligible for such a license, and order the immediate surrender … of any or all firearms, rifles and shotguns owned or possessed." N.Y. Fam. Ct. Act. § 842-a(1)(b). The *ex parte* temporary order of protection in this case was issued pursuant to Section 828 of the Family Court Act, but nothing in the order of protection shows that the Family Court found "a substantial risk that the respondent may use or threaten to use a firearm, rifle or shotgun unlawfully against the person or persons for whose protection the temporary order of protection [was] issued." *Id.*; *see* J. App'x 38-39. Accordingly, Henry's license was not revoked pursuant to the Family Court Act, and therefore it is unclear whether it was revoked under paragraph (a) of § 400.00(11). We need not resolve this question of state law, however, because Henry alleges that the actions of the County violated the Second Amendment regardless of whether those actions were required by state law.

October 12, 2016, the Nassau County Police Department issued a notice formally revoking Henry's pistol license. In addition to revoking Henry's pistol license, the notice informed Henry that he was "prohibited from possessing firearms, rifles, [and] shotguns." J. App'x 119.

Henry promptly appealed the revocation. On January 24, 2018, a Police Department appeals officer issued a written decision upholding the revocation based on (1) a history of "domestic incidents" involving Henry and his wife and daughter, including three "physical altercations" in which Henry was alleged to have been "the aggressor," as well as a history of "incidents" between Henry's wife and son "that required police intervention," *id.* at 145-46; (2) five since-dissolved orders of protection entered against Henry, *id.* at 146; and (3) Henry's purported failure to notify the Police Department, under the rules of the Pistol License Section Handbook, of "his involvement in any domestic incident" in which police were called, of the entry of an order of protection against him, and of his "son's diagnosis with depression" or his related admission to a medical center, *id.* at 147-48. The appeals officer concluded that this evidence established "good cause to revoke [Henry's] pistol license." *Id.* at 148. In his submissions to the Pistol License Section, Henry denied all accusations of domestic violence. He also included affidavits from his wife and daughter, who stated that they supported the reinstatement of Henry's pistol license and ability to possess firearms. His daughter stated further that she did not fear him.

The Nassau County Police Department's written policies provide that when the revocation of a pistol license is upheld by an appeals officer, "the licensee must wait a minimum of five (5) years from the date of revocation or from the appeal decision upholding

9

revocation, whichever is later, before submitting a new, full application for a pistol license." *Id.* at 44. Henry therefore cannot apply for reinstatement of his pistol license—or possess any firearms—until 2023 at earliest.[2] Even at that point, Henry may not be able to obtain a new license.[3]

## II

Henry filed a lawsuit in the United States District Court for the Eastern District of New York against the County of Nassau, the Nassau County Police Department, and several officials affiliated with the Nassau County Police Department. In the complaint, Henry

[2] We note that counsel for the County announced a change in the County's position at oral argument by claiming that Henry is free to purchase longarms. Oral Argument Audio Recording at 16:08-17:55. The County's reversal at oral argument does not affect our decision in this appeal because Henry plausibly alleged that the County's policy was to forbid firearm ownership completely after the revocation of a pistol license, and the case was litigated on that assumption in the district court and before this court. Because our review is limited to determining whether the district court erred in its assessment of the legal sufficiency of the complaint's allegations, we evaluate the district court's decision with respect to the allegations in the complaint and leave consideration of the County's apparent change in position to the district court for proceedings following the motion-to-dismiss stage.

[3] Although Henry may apply for a new pistol license after the five-year term expires, it is not apparent from the record before us that his application could be granted. In the appeals officer's decision upholding the revocation notice, the Nassau County Police Department concluded that "good cause" exists for the revocation of Henry's pistol license. J. App'x 148. Unless the Police Department changes its view, that "good cause" may remain an obstacle to any new application for a pistol license that Henry might file. N.Y. Penal Law § 400.00(1)(n) (noting that "good cause" may require "the denial of the license").

10

asserted a claim under 42 U.S.C. § 1983 for a violation of his Second Amendment rights, alleging individual liability and municipal liability under *Monell*. He also sought a declaratory judgment that the County had violated his Second Amendment rights and injunctive relief requiring the return of his license and firearms. Additionally, Henry asserted a claim under Title VII of the Civil Rights Act of 1964 and a claim for discrimination in violation of 42 U.S.C. § 1981. Henry sought punitive damages from the County and the Nassau County Police Department as well as legal fees from all defendants. Henry subsequently withdrew his Title VII claim.

The defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the Nassau County Police Department is not a suable entity; that the complaint failed to state a claim under the Second Amendment, *Monell*, and 42 U.S.C. § 1981; and that punitive damages are not recoverable against Nassau County.

The district court granted the motion, concluding that the allegations of the complaint, accepted as true, did not state a claim for a violation of the Second Amendment. *Henry*, 444 F. Supp. 3d at 447-49. The district court explained that Henry's complaint alleges that "Nassau County revoked his license following the Order of Protection against him, which has resulted in a total ban on firearm ownership for him." *Id.* at 447. Yet, because Henry did not "actually alleg[e] in his complaint that Nassau County has implemented a policy banning all firearm ownership for all people," the district court concluded that "the restrictions [Henry] complains of do not come close to the core of the Second Amendment right and are not as severe a burden on the right as [Henry] makes them out to be." *Id.* Having concluded that Henry's claims did not lie at the core of the Second Amendment, the

11

district court applied intermediate scrutiny to Henry's claims and held that the County's policy was constitutional because it bore a substantial relationship to the government's interest in preventing domestic violence. *Id.* at 448-49. Because it held that Henry failed to state a claim under the Second Amendment, the district court also dismissed Henry's claim for municipal liability under *Monell. Id.* at 449.

Additionally, the district court dismissed Henry's claim against the Nassau County Police Department on the ground that the Nassau County Police Department is not a suable entity. *Id.* at 442. The district court similarly dismissed Henry's discrimination claim under 42 U.S.C. § 1981, explaining that Henry's "allegations are conclusory and do not support an inference of discriminatory intent." *Id.* at 451. Finally, the district court denied Henry's claims for punitive damages and legal fees. *Id.*

Henry timely appealed.

## DISCUSSION

When reviewing a decision to dismiss a complaint under Rule 12(b)(6), we ask whether the complaint's allegations, taken as true and afforded all reasonable inferences, state a plausible claim for relief. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In this case, Henry's allegations state a claim for relief for a violation of the Second Amendment.

## I

In assessing a claim under the Second Amendment, "we consider two factors: (1) 'how close the [challenged state action] comes to the core of the Second Amendment right' and (2) 'the

12

severity of the [action's] burden on the right.'" *NYSRPA*, 804 F.3d at 258. "[T]he 'core' protection of the Second Amendment is the 'right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 93 (2d Cir. 2012) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008)). When state action imposes a "substantial burden" on the core of the Second Amendment right, we apply strict scrutiny; when that action burdens non-core aspects of the right or burdens the core of the right in an "insubstantial" manner, we apply intermediate scrutiny. *United States v. Jimenez*, 895 F.3d 228, 234 (2d Cir. 2018).

As an initial matter, the district court's scrutiny analysis was flawed because "the Second Amendment confer[s] an *individual right* to keep and bear arms." *Heller*, 554 U.S. at 595 (emphasis added). Henry was therefore not required to allege "a policy banning *all* firearm ownership for *all* people" to state a claim at the core of the Second Amendment. *Henry*, 444 F. Supp. 3d at 447 (emphasis added). In deciding otherwise, the district court failed to treat the right to keep and bear arms as an individual right and treated the Second Amendment in a way that was not "consistent with jurisprudential experience analyzing other enumerated rights." *Kachalsky*, 701 F.3d at 93-94. We would never hold that a plaintiff failed to state a claim at the "core" of the First Amendment because the plaintiff alleged only that the government prohibited him from speaking but did not ban "all" speech for "all" people. Because the Second Amendment—no less than the First—secures an "individual right" that "the Framers and ratifiers of the Fourteenth Amendment counted … among those fundamental rights necessary to our system of ordered liberty," *McDonald v. City of Chicago*, 561 U.S. 742, 777-78 (2010), the district court erred in holding that Henry failed to state a claim at the core of

the Second Amendment merely because he does not allege that the County enacted a complete ban on firearm ownership for all people.

Moreover, contrary to the district court's assertion that "the restrictions [Henry] complains of … are not as severe a burden on the [Second Amendment] right as [Henry] makes them out to be," *Henry*, 444 F. Supp. 3d at 447, there is no doubt that Henry has alleged a substantial burden on his Second Amendment rights. In *United States v. Decastro*, we explained that, "[i]n deciding whether [state action] substantially burdens Second Amendment rights, it is … appropriate to consult principles from other areas of constitutional law, including the First Amendment."682 F.3d 160, 167 (2d Cir. 2012). Drawing an analogy to First Amendment principles governing the constitutionality of time, place, and manner restrictions on speech, we said that one measure of the burden on Second Amendment rights is whether the challenged state action leaves "adequate alternatives … for law-abiding citizens to acquire a firearm for self-defense." *Id.* at 168; *see also id.* ("[U]nder the First Amendment, we ask whether the challenged regulation 'leave[s] open ample alternative channels for communication of the information.'") (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). Here, Henry—who has not been convicted of any crime—alleges that the County has left him with no means of acquiring firearms for any purpose for a period of at least seven years. J. App'x 17; *see id.* at 43 (letter from the Nassau County Police Department to Henry, attached as an exhibit to the complaint, informing him that he is "prohibited from possessing firearms, rifles, [and] shotguns"). Applying the framework set forth

14

in *Decastro*, we have no difficulty concluding that Henry has alleged a substantial burden on his Second Amendment rights.[4]

## II

Because Henry has alleged a substantial burden on his Second Amendment rights, whether strict or intermediate scrutiny applies to Henry's claims depends on whether he has stated a claim at the "core" of the Second Amendment. *Jimenez*, 895 F.3d at 234. That determination turns on whether there is a reliable basis for

---

[4] State law provides that "[i]n any instance in which a person's license is suspended or revoked under paragraph (a) or (b) of this subdivision, such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered to an appropriate law enforcement agency." N.Y. Penal Law § 400.00(11)(c). In Henry's case, at least until oral argument, the County apparently understood the requirement that "any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered" to mean that a person with a revoked license may not own any firearms, and the County informed Henry that he was prohibited from owning any firearms. *See* J. App'x 43. In *Fusco v. County of Nassau*, No. 19-CV-4771, 2020 WL 5820173 (E.D.N.Y. Sept. 30, 2020), which was the subject of a Rule 28(j) letter filed by Henry, the County took the position that this provision requires the ex-licensee to surrender whatever firearms were in his possession at the time of the revocation but allows the ex-licensee immediately to purchase new rifles or shotguns. *Id.* at *10. The County also took that position at oral argument in our court—despite having failed to clarify before the district court or in its briefs to this court that Henry could lawfully purchase longarms. *See supra* note 2. Because we are evaluating only the sufficiency of the allegations in the complaint, we need not decide in this appeal whether New York law permits an individual whose pistol license is suspended and whose firearms are confiscated to subsequently acquire longarms. On remand, the district court may assess how any change in the County's policy or its interpretation of state law bears on Henry's claims.

15

concluding that Henry is not law-abiding and responsible. *Kachalsky*, 701 F.3d at 93. As we discuss below, the complaint plausibly alleges that the evidence on which the County based its decisions was not reliable. Therefore, we cannot determine at this stage whether strict or intermediate scrutiny applies. Even assuming that intermediate scrutiny applies to Henry's claims, however, we conclude that Henry has stated a claim for a violation of the Second Amendment.

"To survive intermediate scrutiny" under the Second Amendment, the government "must show '*reasonable* inferences based on *substantial* evidence'" indicating "that the [state action is] substantially related to the governmental interest" in "public safety and crime prevention." *NYSRPA*, 804 F.3d at 261, 264 (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997)). The County's alleged confiscation of Henry's firearms and revocation of his license do not meet that standard.

**A**

The complaint alleges that the County immediately suspended Henry's pistol license and confiscated all of Henry's firearms based on the issuance of an *ex parte* order of protection and that Henry has since been barred from owning any firearms. It may be that the issuance of an *ex parte* order justifies a temporary license suspension and firearm confiscation to allow the County to investigate whether the subject of the order poses a threat to the safety of others. But Henry alleges that the County's ban on his right to own firearms persisted even after the court that issued the order of protection allowed it to expire. In fact, the County continued to prohibit Henry from owning firearms for a year and a half after the order's

16

dissolution without providing any justification for the prohibition besides the prior issuance of the *ex parte* order of protection.

Such actions do not withstand intermediate scrutiny because *ex parte* orders of protection issue without adversarial testing. The Family Court's order against Henry was based solely on his daughter's allegations.[5] Under New York law, the order did not constitute "a finding of wrongdoing." N.Y. Fam. Ct. Act § 828(2). And because the order was issued *ex parte*, Henry had no opportunity to contest his daughter's allegations in the Family Court proceeding or to demonstrate to the Family Court, before the order issued, that he was not dangerous. In light of these procedural limitations, the *ex parte* order of protection did not provide the "substantial evidence" that intermediate scrutiny requires to support the conclusion that barring Henry from owning firearms for an extended period is "substantially related to the achievement of governmental interests in public safety and crime prevention." *NYSRPA*, 804 F.3d at 261, 264.

Henry's complaint plausibly alleges that the County barred him from owning any firearms for almost two years relying solely on an earlier *ex parte* order of protection. That is sufficient to state a claim under the Second Amendment, even if Henry's claims are subject only to intermediate scrutiny. *See Ramos v. Town of Vernon*, 353 F.3d 171, 181 (2d Cir. 2003) (noting that intermediate scrutiny must be "sufficiently skeptical and probing to provide the rigorous protection that constitutional rights deserve").

---

[5] Henry's daughter subsequently expressed her support for the reinstatement of Henry's license. *See* J. App'x 141 (statement from Henry's daughter that she "is not concerned with, and is not in fear of, Appellant and she supports the reinstatement of his pistol license").

**B**

The complaint also plausibly alleges that the County's eventual revocation of the pistol license and the appeals officer's decision to uphold that decision do not withstand intermediate scrutiny. According to the allegations of the complaint, the County revoked Henry's license without conducting a bona fide inquiry into whether "substantial evidence" supported a finding that Henry was too dangerous to possess firearms. *NYSRPA*, 804 F.3d at 264. Henry plausibly alleges that the County relied on evidence—including the prior issuance of dissolved orders of protection against Henry, unsubstantiated allegations of abuse, and Henry's purported failure to report potential disqualifications to the police—that had limited probative value in establishing Henry's dangerousness. With respect to the dissolved orders of protection, such orders—even if numerous—do not necessarily provide substantial evidence that Henry poses an ongoing danger to his family.[6] In revoking Henry's license, the County did not explain why it found Henry's evidence and arguments responding to its concerns to be unpersuasive, and, at this stage of the litigation, it is not even clear that the County considered Henry's evidence at all.

---

[6] Indeed, Henry denies the allegations of abuse. *See* J. App'x 139 ("Appellant states that he cannot respond to the allegation that he has a history of domestic violence because he does not have one; he only has a history of being in Family Court due to his divorce and 'unsubstantiated allegations' made by his wife."). Moreover, Henry's ex-wife stated in an affidavit that she "feels safe with Appellant having access to firearms, as he has demonstrated that he is safe with them and he needs them for work and personal protection." *Id.* at 141.

With respect to Henry's failure to report the alleged incidents of domestic violence, the issuance of orders of protection, or the fact that his son was diagnosed with and received treatment for depression, the complaint plausibly alleges that Henry again did not have an opportunity to respond to the allegations that he failed to meet reporting conditions of his pistol license. Moreover, these alleged reporting failures, standing alone, do not necessarily provide "substantial evidence" that barring Henry from owning any firearms is "substantially related to the achievement of [the County's] interests in public safety and crime prevention," *NYSRPA*, 804 F.3d at 261, 264, such that the issue can be decided on a motion to dismiss.[7]

The County's review, leading to its decision to revoke Henry's right to own firearms, was allegedly conducted without affording Henry the opportunity to submit evidence in support of his position. And even when he took his appeal, it is plausible that, as Henry alleges, the appeals officer did not conduct a genuine inquiry into whether Henry actually posed a danger to others. According to the complaint, the appeals officer credited Henry's ex-wife's allegations and failed to consider whether the evidence—including the ex-wife's more recent affidavit in favor of his ability to own firearms—supported a finding of dangerousness. Because Henry plausibly alleges that the County's decision was not based on a reliable determination that he posed a danger to others, Henry has stated a

---

[7] Whether the alleged reporting failures justify the County's rescission of Henry's license and/or its ban on gun ownership for Henry are issues that the district court should address after considering Henry's evidence and argument on remand. *See infra* Part V.

claim for a violation of the Second Amendment even if his claims are subject only to intermediate scrutiny.

We accordingly reverse the district court's judgment dismissing Henry's claim under 42 U.S.C. § 1983 alleging a violation of his Second Amendment rights as well as his claims for declaratory and injunctive relief and legal fees. Because Henry alleges that "the violation of his constitutional rights resulted from a municipal custom or policy," *Costello v. City of Burlington*, 632 F.3d 41, 49 (2d Cir. 2011), we also reverse the district court's dismissal of Henry's claim for municipal liability under *Monell*.

## III

We affirm the district court's dismissal of Henry's claim under 42 U.S.C. § 1981. "[T]o state a claim under … Section 1981 … a plaintiff 'must allege facts supporting a defendant's intent to discriminate against him on the basis of his race.'" *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 80 (2d Cir. 2021) (en banc) (alterations omitted). In his complaint, Henry, who as mentioned above is African American, alleges that the County's policies were intended to "deter ownership of all firearms and with the intention and effect of reducing pistol license ownership, most especially in the non-white communities of Nassau County." J. App'x 66-67. He further alleges that the County's purported policy to deter firearm ownership is unconstitutional because the policy "[d]isregard[s] the discriminatory effect of the impact of the Policy in the non-white community." *Id.* at 94.

"A plaintiff alleging racial … discrimination … must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving

20

rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). While Henry has alleged that the County's firearm policies have a discriminatory purpose and effect, he has not pleaded any facts supporting an inference of discriminatory intent. Henry alleges only that "White communities" within Nassau County appear to have a higher rate of pistol ownership than "Hispanic" or "Black" communities. J. App'x 92. But Henry does not allege facts supporting the inference that these purported disparities are the result of discrimination. Henry even notes that white pistol owners appear to be disproportionately likely to have their pistol licenses revoked, which undercuts an inference of intentional discrimination. *Id.* at 93.

Henry accordingly has not "offer[ed] more than conclusory allegations that he was discriminated against because of his race" and has therefore failed to state a claim under § 1981. *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087-88 (2d Cir. 1993). We accordingly affirm the district court's dismissal of Henry's claim under 42 U.S.C. § 1981.

**IV**

We also affirm the district court's dismissal of Henry's claims against the Nassau County Police Department and his claim for punitive damages. As the district court noted, the Nassau County Police Department is a non-suable agency of Nassau County. *Henry*, 444 F. Supp. 3d at 442. Henry's claims against the Nassau County Police Department were therefore properly dismissed. *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Dismissal of Henry's claim for punitive damages was also proper because Henry sought such damages from the Nassau County Police Department,

21

which cannot be sued, and Nassau County, which cannot be held liable for punitive damages under 42 U.S.C. § 1983. *See DiSorbo v. Hoy*, 343 F.3d 172, 182 (2d Cir. 2003). We therefore affirm the district court's dismissal of Henry's claims against the Nassau County Police Department and his claim for punitive damages.

## V

On remand, the district court should first reexamine whether strict or intermediate scrutiny applies to Henry's claims. Because Henry has alleged a substantial burden on his Second Amendment rights, that determination will depend on whether there is a reliable basis for concluding that Henry is not law-abiding and responsible. *Kachalsky*, 701 F.3d at 93.[8] The district court should undertake this inquiry with respect to each relevant time period of deprivation alleged in the complaint because the County made different findings at each stage: the deprivation was initially based on the dissolved *ex parte* temporary order of protection, then on the official revocation of Henry's his pistol license, and then on the decision of the appeals officer. The County's burden may be different with respect to Henry's pistol license and his right to own longarms.

## CONCLUSION

We hold that Henry has stated a claim for a violation of the Second Amendment and accordingly reverse the district court's judgment dismissing Henry's claims under 42 U.S.C. § 1983 and *Monell*, as well as his claims for declaratory and injunctive relief and

---

[8] If the district court were to determine that the County's actions do not satisfy even intermediate scrutiny, it may not be necessary to decide at the outset the level of scrutiny that applies.

for legal fees. We affirm the district court's dismissal of Henry's other claims and remand this case to the district court for further proceedings consistent with this opinion.