20-0086-cv
*Juzumas v. Nassau County*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2020

No. 20-0086-cv

VICTOR JUZUMAS,
*Plaintiff-Appellant*,

v.

NASSAU COUNTY, NEW YORK,
*Defendant-Appellee,*

"JOHN DOES 1-5"
*Defendants.*

On Appeal from the United States District Court for the Eastern
District of New York

ARGUED: DECEMBER 10, 2020
DECIDED: MAY 12, 2022

Before: POOLER, WESLEY, CARNEY, *Circuit Judges*.

Victor Juzumas sued Nassau County (the "County") and five "John Doe"

law enforcement officers (the County and the individuals together, "Defendants")

for alleged constitutional violations arising from their enforcement of New York Penal Law § 400.00(11)(c). Juzumas alleges that the County's policy interpreting and applying § 400.00(11)(c) is broader than the law itself, and unconstitutional as it was applied to him. The United States District Court for the Eastern District of New York (Donnelly, *J.*) disagreed, finding that the County acted to enforce a mandatory provision of state law and as a result was not a proper defendant under *Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008). It granted Defendants' motion for summary judgment on Juzumas's First, Second, and Fourth Amendment claims, related *Monell* claims, and Section 1983 conspiracy claim. Juzumas appeals the district court's order. We **AFFIRM** the order of the district court in part, except to the extent that it failed to reach an adequate determination on the County's longarms possession policy. We **VACATE** and **REMAND** in part for the district court to address that aspect of Juzumas's Second Amendment and *Monell* claims.

---

AMY L. BELLANTONI, The
Bellantoni Law Firm, PLLC,
Scarsdale, NY, *for Plaintiff-Appellant*.

JARED A. KASSCHAU, Nassau
County Attorney, Mineola, NY
(Robert F. Van der Waag, Deputy
County Attorney, *on the brief*), *for
Defendant-Appellee*.

---

2

PER CURIAM:

Victor Juzumas sued Nassau County (the "County") and five "John Doe" law enforcement officers (the County and the individuals together, "Defendants") for alleged constitutional violations arising from their enforcement of New York Penal Law § 400.00(11)(c). Juzumas alleges that the County's policy interpreting § 400.00(11)(c) is broader than the law itself, and unconstitutional as it was applied to him. The United States District Court for the Eastern District of New York (Donnelly, *J.*) disagreed, finding that the County acted in large part to enforce a mandatory provision of state law and was not a proper defendant under *Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008). *Juzumas v. Nassau Cty.*, 417 F. Supp. 3d 178 (E.D.N.Y. 2019). It granted Defendants' motion for summary judgment on Juzumas's First, Second, and Fourth Amendment claims, related *Monell* claims, and Section 1983 conspiracy claim. We affirm the order of the district court in part, except to the extent that it failed to reach an adequate determination on the County's longarms possession policy. We vacate and remand in part for the district court to address that aspect of Juzumas's Second Amendment and *Monell* claims.

## BACKGROUND

### I.    Statutory Framework

New York Penal Law creates a licensing regime for the possession of pistols, revolvers, and certain other handguns, which it refers to as "firearms." *See* N.Y. Penal Law § 265.00(3). This regime makes it unlawful in New York to possess a firearm without a license. *See id.* §§ *et seq.* 265.20(3), 400.00(2). Eligibility for a license is governed by Penal Law § 400.00(1), which provides that "[n]o license

3

shall be issued or renewed except for an applicant" who meets several enumerated requirements. Among those requirements are that the applicant be "of good moral character," *id.* § 400.00(1)(b), and that there be "no good cause . . . for the denial of the license," *id.* § 400.00(1)(n). Under the state law, licenses—colloquially referred to as either pistol, handgun, or firearm licenses—are generally issued and administered by local governmental units or officers. In Juzumas's case, Nassau County was charged with the licensing responsibility.

The State maintains no similar licensing scheme for long-barrel rifles and shotguns ("long guns" or "longarms").[1] However, the Penal Law speaks to continued long gun possession by a person whose pistol license has been revoked, as we describe below. Pistol license revocation may occur in several different circumstances. Among them is that described by Penal Law § 400.00(11)(a), which provides that a license holder's conviction of a "felony" or "serious offense," or the license holders "at any time becoming ineligible to obtain a license under this section," "shall operate as a revocation of the license." *See also* N.Y. Penal Law § 265.00(17) (defining "serious offense"). In addition, § 400.00(11)(b) requires licensing officers to suspend or revoke the license of any person about whom a report of mental disturbance has been made pursuant to New York Mental Hygiene Law § 9.46.

The tethering between longarm possession and pistol licenses occurs in subsection (c) of Penal Law § 400.00(11). Subsection (c) provides that in "any

---

[1] Rifles and shotguns whose barrels have been sawed off, however, are treated by the Penal Law as "firearms" and are subject to the licensing regime. *See* N.Y. Penal Law § 265.00(3).

instance in which a person's license is suspended or revoked under paragraph (a) or (b) of this subdivision, such person *shall surrender such license* to the appropriate licensing official *and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered* to an appropriate law enforcement agency." N.Y. Penal Law § 400.00(11)(c) (emphasis added).

Nassau County adopted a policy implementing this part of the state statutory framework. In May 2014, it published a legal bulletin declaring that "a person whose handgun license is suspended or revoked for any reason is not only required to surrender [his] license and handguns but also [his] rifles and shotguns to the licensing authority (Nassau County Police Department)." JA 268–73.[2] The written policy does not state whether an individual in Nassau County whose pistol license has been revoked and weapons have been surrendered may possess long guns again before being issued another pistol license. As Juzumas describes the County policy, however, that individual may lawfully possess long guns again *only* after he applies for, and the County issues him, another pistol license. *See Juzumas*, 417 F. Supp. 3d at 182.

---

[2] The County's written policy interpreting state law is also published in Nassau County Police Department Procedure OPS 10023, entitled "Removal and Disposition of Weapons—Domestic Incidents/Threats to Public Safety." Special App'x 4. As summarized by the district court, "[u]nder OPS 10023, longarm possession may be prohibited if (a) the owner is prohibited from possessing rifles or shotguns under the Federal Gun Control Act, (b) the owner has a relevant pending court disposition, (c) the owner is a subject of an order of protection, (d) the owner has a relevant Nassau County arrest history, (e) domestic incidents have occurred since the time of the confiscation or voluntary surrender, or (f) there are other extenuating circumstances that indicate that the longarms should not be returned." *Juzumas*, 417 F. Supp. 3d at 182 n.6.

## II. Facts[3]

Juzumas, a customs broker and resident of Nassau County, applied for and received a pistol license from the County in January 2003. In May 2008, Juzumas was arrested for conspiring to import controlled substances. The arresting officer confiscated his pistol license and pistols. In September 2008, the County suspended Juzumas's pistol license based on the May arrest. Soon after his license suspension, law enforcement officers collected Juzumas's long guns, but returned the long guns to him a few weeks later. Almost four years later, in June 2012, Juzumas pleaded guilty to a misdemeanor conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, in connection with his 2008 arrest.

In November 2015, three years after his guilty plea and seven years after his initial license suspension, the County sent Juzumas a letter stating that his pistol license had been revoked. It identified three bases for the revocation: (1) "[a]rrest history," (2) "[c]onviction of violation title 18 USC 371 [sic]," and (3) "[l]ack of good moral character." Joint Appendix ("JA") at 58. It further advised that, as "directed by New York State Penal Law section 400, and the New York State Secure Ammunitions and Firearm Enforcement Act [SAFE Act], you are prohibited from possessing firearms, rifles, shotguns." *Id.* The County's letter informed Juzumas of several options for disposing of his weapons: "a transfer of ownership to a properly licensed individual as mandated by the NY Safe Act, sale

---

[3] The facts are taken from the district court's decision. Except as noted, they are undisputed.

6

to a New York State licensed gun dealer; or request the destruction of the firearm(s)." *Id.*

After receiving the letter, Juzumas made gifts of his long guns to his son-in-law, to a "hunting buddy," and to a friend. Special App'x 6. (In light of the 2008 pistol license suspension, he no longer possessed a pistol.) He then unsuccessfully attempted to appeal the pistol license revocation using County administrative processes. He represented to the district court that he had not tried to buy long guns since his license was revoked.

## III.   Procedural History

In May 2017, Juzumas sued Defendants in the United States District Court for the Eastern District of New York. He alleged that they violated his First, Second, Fourth, and Fourteenth Amendment rights by requiring the surrender of his long guns upon revocation of his pistol license, by conditioning his reacquisition of long guns upon the issuance to him of a new pistol license, and by denying his application for a new license on the ground that his misdemeanor conviction was a "serious offense" within the meaning of Penal Law § 265.00(17). Issue was joined and the parties cross-moved for summary judgment.[4]

The district court granted judgment to the County on Juzumas's Second Amendment claim, finding that the County did not infringe Juzumas's right to bear arms in any way not required by the state law, whose constitutionality Juzumas had not challenged. The district court reasoned that, through its policy

[4] While the cross-motions were pending, Juzumas abandoned his First Amendment and conspiracy claims against the County.

7

requiring surrender of the license and longarms, the County was merely enforcing Penal Law § 400.00(11). The district court dismissed Juzumas's Fourth Amendment claim, finding no governmental seizure because Juzumas voluntarily "gave away" his long guns. *Juzumas*, 417 F. Supp. 3d at 187–88. It agreed with Juzumas, however, on his Fourteenth Amendment claim, concluding that he should have received a hearing before being required to permanently cede possession of his long guns.[5]

The district court granted summary judgment to the County on Juzumas's *Monell* claims arising from his Second and Fourth Amendment allegations. It briefly addressed Juzumas's claim that the County's open-ended prohibition on his possession of longarms contravened his Second Amendment rights by commenting that "[a]t oral argument, counsel for the County said that the County no longer uses the [revocation] letter that the plaintiff received, and that it is now clear that someone whose pistol license has been revoked, and surrenders longarms at the time of the revocation, is free after the confiscation of his longarms to go out and purchase other longarms." *Juzumas*, 417 F. Supp. 3d at 183 (internal footnote and quotations omitted). The court noted that, apart from the statement made at oral argument, "[t]he County did not explain how the plaintiff would have learned of the policy change, or the extent to which a background check, which would have alerted a gun dealer that the plaintiff's license had been revoked, would have been an impediment to purchasing a longarm." *Id.* It further observed that "[a]t oral argument, counsel for the County conceded that the

---

[5] The parties later settled this Fourteenth Amendment claim and the district court dismissed it with prejudice before entering final judgment.

plaintiff's continued possession of his longarms did not pose any danger to the community." *Id.* at 190.

Juzumas appeals the district court's grant of summary judgment to the County on his Second and Fourth Amendment claims.

## DISCUSSION[6]

### I.    Second Amendment Claims

Juzumas argues that Nassau County's policy regarding the surrender and reacquisition of long guns is homegrown and not merely an enforcement of state law.  First, he reads state law to require the surrender of long guns only when the revocation of a pistol license is based upon the factors specifically mentioned in Penal Law § 400.00(11), and not when based on any of the other reasons set forth in the rest of Penal Law § 400.00.  In other words, he would limit the tethering provision to the reasons for revoking a pistol license that are specifically enumerated (and not merely referred to) in Penal Law § 400.00(11).  He urges that the County's policy extends beyond the mandates of state law and in doing so violates his right under the Second Amendment to possess long guns.  Second, he contests the County's position—in effect when the County required the surrender

---

[6] The standard of review here is well known.  "We review *de novo* a district court's order granting summary judgment, construing the evidence in the light most favorable to the non-moving party. As relevant here, we also review *de novo* the district court's legal conclusions, including those interpreting and determining the constitutionality of a statute. Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 252 (2d Cir. 2015) (internal quotation marks and citations omitted).

of his longarms in 2015 but now perhaps abandoned—that, despite the absence of a state licensing regime for longarms, he is prohibited from possessing a longarm unless and until he applies for and obtains a new pistol license. We address each contention in turn.

A.    Does state law require surrender of longarms upon revocation of pistol license?

As to his first argument, we conclude that Juzumas misreads Penal Law § 400.00. The subsection of Penal Law § 400.00 that addresses long gun surrender provides that in "any instance in which a person's license is suspended or revoked under paragraph (a) or (b) of this subdivision . . . any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered." N.Y. Penal Law § 400.00(11)(c). Thus, by the statute's express terms, when an individual's pistol license is suspended or revoked for any reason set forth in Penal Law § 400.00(11)(a) or (b), the licensee must surrender his long guns.

Penal Law § 400.00(11)(a) does the work in Juzumas's case: it covers the reasons Juzumas's pistol license was revoked. It provides that "a licensee at any time becoming ineligible to obtain a license *under this section* shall operate as a revocation of the license." *Id.* § 400.00(11)(a) (emphasis added). In other words, under subsection (a), any change in the licensee's life that would have resulted in the denial of her application for a pistol license (had she applied at the time of the change) effects a revocation of the license. Thus, the question presented by Juzumas turns on the meaning of the phrase "under this section" in Penal Law § 400.00(11)(a). If that phrase refers to the whole of Penal Law § 400.00 and any of the reasons stated in § 400.00 that a person may be ineligible to obtain a handgun

10

license, then the County's policy is congruent with state law. Juzumas contends, however, that "this section" refers to Penal Law § 400.00(11) only, and not to Penal Law § 400.00.

It takes no leap of logic to realize that the County is correct in arguing that the phrase "this section" refers to the whole of Penal Law § 400.00 and not merely its subsection (11). In reaching that conclusion, we look first to the text of the statute. *Matter of Peyton v. N.Y.C. Bd. of Standards & Appeals*, 36 N.Y.3d 271, 279 (2020). The first hint occurs in the title of § 400.00, which is identified by the symbol "§," a mark well understood to mean "section." The second indication is found in the language of the Penal Law: Section 400.00(11)(c) refers to itself as a "subdivision." It states, "[i]n any instance in which a person's license is suspended or revoked under *paragraph (a) or (b) of this subdivision*, such person shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered." N.Y. Penal Law § 400.00(11)(c) (emphasis added). We take these words and symbols for their plain meaning: the legislature intended the word "section" as used in § 400.00(11) to refer to Penal Law § 400.00. *See People v. Pabon*, 28 N.Y.3d 147, 152 (2016).

The structure and legislative history of Penal Law § 400.00 also support the County's reading. *See Nadkos Inc. v. Preferred Constr. Ins. Co. Risk Retention Grp. LLC*, 34 N.Y.3d 1, 7–11 (2019) (looking at the plain text, statutory structure, and legislative history when interpreting a statute). The various reasons why a person may be ineligible for a pistol license appear throughout § 400.00. The operative clause in Penal Law § 400.00(11)(a)—"or a licensee at any time becoming ineligible to obtain a license under this section"—was added in 2013 by the New York State

Secure Ammunition and Firearms Enforcement Act (the "SAFE Act"). The other reasons for losing a pistol license that are enumerated in the same subsection (that is, being convicted of a felony or serious offense and becoming subject to a protective order) were already in place when the SAFE Act was passed. The operative language added by the SAFE Act would thus be superfluous if it did not refer to the additional grounds for ineligibility enumerated in other subsections of Penal Law § 400.00. *Cf. Leader v. Maroney, Ponzini & Spencer*, 97 N.Y.2d 95, 104 (2001) ("meaning and effect should be given to every word of a statute").[7]

In requiring Juzumas to surrender his longarms after his conviction, Nassau County was reasonably applying state law, not crafting its own independent firearm surrender policy untethered to the Penal Law. As the district court noted, our opinion in *Vives* establishes the framework for assessing asserted constitutional violations arising from municipal enforcement of state law. *See* 524 F.3d at 353. There, we set out a two-part test that looks generally to the amount of

_____

[7] We have not located a case in which a plaintiff asserted claims against a county that are analogous to those made by Juzumas. Previous decisions made in related contexts, however, lend support to the County's position. For example, New York courts appear to frequently affirm pistol license revocations under Penal Law § 400.00(11) without referencing the reasons for revocation that are specifically mentioned in that subdivision. *See, e.g.*, *Matter of Derry v. Fufidio*, 192 A.D.3d 1099 (2d Dep't 2021) (upholding revocation of a pistol license where the licensee's 11-year-old son posted on social media a video of himself brandishing a pistol); *Matter of Nash v. Nassau Cty.*, 150 A.D.3d 1120, 1121 (2d Dep't 2017) (upholding revocation of a pistol license after licensee was acquitted of criminal charges). These decisions imply an understanding of the phrase "or a licensee at any time becoming ineligible to obtain a license under this section," N.Y. Penal Law § 400.00(11)(a), that encompasses the other reasons that may render a person ineligible under Penal Law § 400.00 to obtain a pistol license. These include, for example, failure to meet the requirement of "good moral character," *id.* § 400.00(1)(b), and the existence of "good cause . . . for the denial of the license," *id.* § 400.00(1)(n).

12

autonomy enjoyed by the municipality in effectuating the policy in question. *See id*. First, we ask whether the municipality had a "meaningful choice" as to whether it would enforce the law. *Id*. If it did, then we ask whether the municipality adopted a "discrete policy" to enforce the law that represented a "conscious choice" by one of its policy makers. *Id*. If both conditions are met, then the municipality exercises a sufficient degree of autonomy to face liability for its policy choices.

In *Vives*, we remanded for further fact-finding on the question whether the municipality had a "meaningful choice" as to whether it would enforce the statute. We cautioned that the statute in question did "not constitute such a mandate because it simply defines an offense without directing municipal officials to take any steps to act when the statute is violated." *Id*. That is far from the case here: Penal Law § 400.00(11)(c) directs that long guns "shall be removed and declared a nuisance" in the event that they are not surrendered upon the suspension or revocation of a pistol license. The language following "shall" in a statute is "mandatory, not precatory." *See Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015). This mandatory language ends our inquiry. Juzumas's dispute rests with the state law, whose constitutionality he has not challenged.

> B. <u>Is the County's alleged policy conditioning lawful longarm possession on reinstatement of a pistol license consistent with the Second Amendment?</u>

Juzumas also challenges the County's policy, as described in its 2015 revocation letter, that the revocation of his pistol license entails the loss of his right to possess longarms again until the County issues him a new pistol license. The

state law, he submits, speaks only to the prompt surrender of longarms that are in the possession of a person whose pistol license is suspended or is revoked "*at the time*" of the suspension or revocation. Reply Br. at 2. As explained above, Penal Law § 400.00(11) provides that a person whose pistol license has been revoked for any of the reasons provided in § 400.00 "shall surrender such license to the appropriate licensing official and any and all firearms, rifles, or shotguns owned or possessed by such person shall be surrendered to an appropriate law enforcement agency." N.Y. Penal Law § 400.00(11)(c). The state law does not by its terms prohibit such a person from ever possessing a longarm thereafter, nor does it expressly condition renewed longarm possession on the issuance of a new pistol license. To the extent that Juzumas accurately interprets the County's policy as effecting an enduring ban on longarm possession by a person whose pistol license was revoked, we agree with him that the policy goes beyond what state law requires. The district court did not address this aspect of Juzumas's challenge, however, and determined only that it was "not clear" whether Juzumas was permitted to possess long guns again under the County's policy. *Juzumas*, 417 F. Supp. 3d at 182 n.5, 183.

Throughout this litigation, the County has offered inconsistent declarations about its policy on post–license revocation longarm possession. As described above, the County advised Juzumas in November 2015 that he was precluded from possessing longarms until his license was reinstated, an event that cannot occur until at least five years after the revocation. At deposition, a Nassau County

Police Department ("NCPD") lieutenant testified variably on the question.[8]  The

NCPD Procedure OPS 10023, "Removal and Disposition of Weapons—Domestic

[8] Lieutenant Timpano testified as follows in response to questioning by Juzumas's counsel:

> Q. Is it the position of the Nassau County Police Department then that if any individual has a pistol license that is suspended or revoked, that they automatically lose their right to possess shotguns or rifles?
>
> A. That's correct.
>
> Q. It doesn't matter what the ground was for the suspension or the revocation of their pistol license; is that correct?
>
> A. That's correct.

JA 153. And then he testified, somewhat confusingly:

> Q. And they can only—the individual would only be able to lawfully possess long guns after they reapplied for their pistol license and that application was granted?
>
> A. That is correct.
>
> Q. And what criteria does the pistol license unit use to determine whether an individual's long guns are returned to them once they reapply for the pistol license?
>
> A. I don't understand the question.
>
> Q. In other words, the five years—someone's pistol license is revoked and five years goes by and they reapply for their pistol license, then is it the case that the pistol license division is making a determination of whether the individual can lawfully possess handguns or long guns based on the same criteria?
>
> A. If at any point they no longer become ineligible to be in possession of a firearm, they can be in possession of long guns, as well as a handgun, if they get a pistol permit. You don't need a pistol permit by itself to get a—to have a long gun. However, if your pistol license is revoked, then during that revocation period, you can be in

Incidents/Threats to Public Safety," *see supra* note 2, describes a process for a "Rifles and Shotguns Investigation" to be conducted by a "Precinct Domestic Incident Liaison Officer" after surrender of rifles and shotguns.[9]  JA 295.  It provides that the officer's job is to "[i]nitiate[] an administrative review to determine if a legal impediment exists *not* to return confiscated rifles and shotguns."  *Id.* (emphasis in original).  It does not define "legal impediment," but it cites 18 U.S.C. § 922 (the Federal Gun Control Act), Penal Law § 265 ("Firearms and other dangerous weapons"),[10] and Penal Law § 400 ("License to carry") as relevant.  It elsewhere places a duty on the officer to "[d]etermine[] if any of [certain listed] conditions exist" as part of the inquiry on which the return of firearms depends.  *Id.* at 294, 296.  It then lists these conditions as bearing on the return of rifles and shotguns:

> a. the owner is prohibited from possessing rifles or shotguns under the Federal Gun Control Act,
>
> b. the owner has a relevant pending court disposition,
>
> c. the owner is a subject of an order of protection,
>
> d. the owner has a relevant Nassau County arrest history,

possession of a long gun. If a person reapplies and they get their pistol license back, then they can be in possession of a long gun.

*Id.* at 186–87.

[9] The stated effective date of OPS 10023 is "5/11/2012," before the SAFE Act was enacted, but in this litigation the County appears to have relied on it without qualification.

[10] Penal Law § 265.01, "Criminal possession of a weapon in the fourth degree," makes it a crime for persons who have been "convicted of a felony or serious offense" to possess such guns.  *Id.* § 265.01(4); *see also* N.Y. Penal Law § 265.00(17) (defining "serious offense").  It also criminalizes possession by persons who are "certified not suitable to possess a rifle or shotgun."  N.Y. Penal Law § 265.01(6).

16

e. domestic incidents have occurred since the time of the confiscation of voluntary surrender,

f. other extenuating circumstances which indicate that rifles and shotguns should not be returned.

*Id.* at 296. Perhaps this list can be read as setting forth the relevant "legal impediments," but the phrasing of condition (f), "other extenuating circumstances," is so broad as to make it hard to call it a "legal impediment." If no legal impediment exists, however, then the written NCPD policy does not appear to prohibit a licensee from acquiring new long guns even if his or her pistol license was and remains revoked. *See id.* at 301 ¶ 26.

In its submissions to the district court, the County described its policy according to the terms of OPS 10023 and averred that this policy "was in effect, and was applied to Plaintiff, when Plaintiff's pistol license was revoked by [the County]." *Id.* at 301 ¶ 27. But, as mentioned above, the County declared at oral argument in the district court that it "no longer uses the letter that the plaintiff received," and that it was at that point "clear" that a person whose longarms were surrendered after license revocation is "free . . . to go out and purchase other longarms." *Juzumas*, 417 F. Supp. 3d at 183; *see id.* at 182 n.5, 183 (recognizing that the County's policy appeared to have changed during the course of the litigation). No new standard revocation letter stating the policy or other document reflecting a new policy was presented by the County. *Id.* at 183 n.11.

In its brief on appeal, the County submits that "[i]f no legal impediment exists, NCPD does not automatically prohibit a licensee from possessing long guns even if his or her pistol license is revoked." Appellee Br. at 11 (discussing administrative review process under OPS 10023). It adds that "[i]f no such

impediment existed, NCPD would not automatically prohibit [Juzumas] from possessing long guns even if his pistol license was still revoked, as possession of a pistol license and possession of long guns are subject to two (2) separate determinations based upon two (2) distinct standards of review." *Id.* at 12–13, 14. But the County also declares without qualification that "[t]he SAFE Act amended Penal Law § 400.00(11) to include *the prohibition of ownership* of longarms by individuals whose pistol license were suspended or revoked." *Id.* at 19 (emphasis added).

Our Court was presented with similarly inconsistent assertions on Nassau County's longarm possession policy in concurrent litigation. In *Henry v. County of Nassau*, 6 F.4th 324 (2d Cir. 2021), we heard a parallel challenge to the County's policy that was mounted by another individual who was required to surrender his firearms and longarms after losing his pistol license based on an alleged domestic incident.[11] In reversing the district court's grant of a motion to dismiss, we observed that the County's written policies were such that the plaintiff there "cannot apply for reinstatement of his pistol license—or possess any firearms— until" at least "five (5) years from the date or revocation or from the appeal decision upholding revocation, whichever is later." *Id.* at 330. As did the district court here, however, we noted that "counsel for the County announced a change in the County's position [in this respect] at oral argument by claiming that [the

---

[11] Our Court conducted oral argument in *Henry* in October 2020; the district court conducted oral argument in this case in September 2019.

plaintiff] is free to purchase longarms." *Id.* at 330 n.2.[12]  Evaluating the absolute prohibition that the plaintiff had pleaded, we determined that such a policy—if proven—would impose a "substantial burden" on the plaintiff's Second Amendment rights and therefore be subject to heightened scrutiny.  *Id.* at 332.

In his post-argument briefing addressing *Henry*, Juzumas appears to consider the County's absolute prohibition on longarm possession to still be in effect and targets it with his Second Amendment challenge.[13]  The County, in contrast, cites a change in its policy from an absolute prohibition to the virtual opposite, writing, "[T]he Deputy County Attorney advised Judge Donnelly that the Police Department subsequently changed its interpretation of § 400.00, so that any person whose pistol license was revoked was free to obtain longarms (other than the longarms that were initially confiscated)."  Appellee Ltr. Br. at 3 (Aug. 25, 2021).  Having twice reversed its basic position, the County has yet to provide a complete description of when it will be lawful for Juzumas to reacquire longarms. It proposed that "these facts will be explored and a full determination regarding

---

[12] We continued, "The County's reversal at oral argument does not affect our decision in this appeal because Henry plausibly alleged that the County's policy was to forbid firearm ownership completely after the revocation of a pistol license . . . ."  *Henry*, 6 F.4th at 330 n.2.

[13] In his post-argument briefing, Juzumas makes the additional argument that the County could only bar him from possessing longarms if he were guilty of a "serious offense," as defined by Penal Law § 265.00(17), and therefore ineligible for possession of *any* firearms. *See* Appellant Ltr. Br. at 4–5 (Aug. 25, 2021).  His misdemeanor offense, he avers, is not within the category of *per se* disqualifying "serious offenses" that would make him ineligible for possession under state law.  *Id.*

them and their application to any claim, pursuant to the Second Circuit['s] analysis, will be made," presumably on remand. *Id.* at 6.

In light of the absence of explicit state law constraints on Juzumas's renewed possession of longarms, the shapeshifting record as to the County's actual policy, and the constitutional nature of Juzumas's challenge to the policy that was applied to him, we find it necessary to vacate the district court's decision in this respect and remand the matter for further fact-finding and adjudication of this aspect of the Second Amendment challenge.

## II.    Fourth Amendment Claim

Juzumas's Fourth Amendment claim fails for the same reason that his Second Amendment claim regarding the County's policy requiring longarm surrender fails. As explained in Section I.A above, this aspect of the County's policy constituted a straightforward enforcement of Penal Law § 400.00(11), which requires a person to surrender his longarms when his pistol license is revoked for any of the reasons provided in § 400.00. To the extent that the County was merely complying with a state directive that is not challenged here, the County is not the proper defendant to Juzumas's Fourth Amendment claim. *See Vives*, 524 F.3d at 352.

Even if the County were the proper defendant to this challenge, it is at best uncertain that the County "seized" his longarms within the meaning of the Fourth Amendment at all, much less unreasonably seized them. *See, e.g., Fernandez v. California*, 571 U.S. 292, 298 (2014) ("[T]he ultimate touchstone of the Fourth Amendment is reasonableness."); *Kaminsky v. Schriro*, 760 F. App'x 69, 72 (2d Cir. 2019) (summary order) (holding that a gun owner who surrendered his firearms

20

to police officers after being notified that, as a felon, he was prohibited from possessing them could not state a Fourth Amendment claim when they were not returned). *Cf. Maryland v. Macon*, 472 U.S. 463, 469 (1985) (holding that an undercover officer's purchase of adult magazines was not a seizure of the magazines from a vendor). While the government may seize a *person* by a mere "show of authority" so long as the person submits, *Brendlin v. California*, 551 U.S. 249, 254 (2007), the "show of authority" doctrine does not appear to have been extended to cover the seizure of personal effects. *See* Maureen E. Brady, *The Lost "Effects" of the Fourth Amendment: Giving Personal Property Due Protection*, 125 YALE L.J. 946, 957–64 (2016) (discussing the limited jurisprudence addressing the "effects" provision of the Fourth Amendment).

This claim was thus properly dismissed.

## CONCLUSION

The order of the district court granting Nassau County's motion for summary judgment is **AFFIRMED** in part and **VACATED** in part, and the case is **REMANDED** for further consideration of Juzumas's challenge to the County's post-surrender longarm policy.