*Women for Am. First v. Adams*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27ᵗʰ day of May, two thousand twenty-two.

PRESENT:
> JOHN M. WALKER, JR.,
> JOSEPH F. BIANCO,
> BETH ROBINSON,
> *Circuit Judges.*

---

Women for America First,

> *Plaintiff-Appellant*,

> v.                                        21-485-cv

Mayor Eric Adams, in his official capacity
as Mayor of New York City, New York,
Ydanis Rodriguez, Commissioner of the
New York City Department of Transportation,*

> *Defendants-Appellees.***

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Eric Adams, Mayor of New York City, is automatically substituted for former Mayor of New York City Bill de Blasio, and Ydanis Rodriguez, Commissioner of the New York City Department of Transportation, is automatically substituted for former Commissioner of the New York City Department of Transportation Polly Trottenberg.

\** The Clerk of Court is respectfully instructed to amend the caption to conform with the above.

FOR PLAINTIFF-APPELLANT:                    Ronald D. Coleman, Dhillon Law Group
                                             Inc., New York, NY.

FOR DEFENDANTS-APPELLEES:                   Claude S. Platton, Jane L. Gordon, Elina
                                             Druker, *for* Georgia Pestana, Corporation
                                             Counsel of the City of New York, New
                                             York, NY.

Appeal from an order and judgment of the United States District Court for the Southern

District of New York (Schofield, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND**

**DECREED** that the order and judgment of the district court are **AFFIRMED**.

Plaintiff-appellant Women for America First ("WFAF") appeals from the February 18,

2021 order and the February 19, 2021 judgment of the United States District Court for the Southern

District of New York (Schofield, *J.*), dismissing WFAF's amended complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6).[1]   We assume the parties' familiarity with the underlying facts

and procedural history of this case, to which we refer only as necessary to explain our decision to

affirm.

**BACKGROUND**[2]

In July 2020, New York City employees and private citizens began painting "Black Lives

Matter" in large, bright-yellow letters on Fifth Avenue in Manhattan, directly in front of Trump

Tower.   The mural was allegedly undertaken by the New York City Department of Transportation

("DOT") at an initial cost of approximately $6,000.   Moreover, the mural was part of former New

---

[1]   The Notice of Appeal incorrectly states the Opinion and Order was entered on September 18, 2021.

[2]   For purposes of reviewing the district court's granting of the motion to dismiss, this summary of the facts is taken from the allegations contained in WFAF's complaint, as well as from press reports and other documents "incorporated in the complaint by reference."   *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

York City Mayor Bill de Blasio's commitment to the "Black Lives Matter" movement, which included an announcement by Mayor de Blasio that each borough in New York City (the "City") would get its own "Black Lives Matter" mural. Thus, according to the amended complaint, the mural on Fifth Avenue was one of seven similar murals painted on streets throughout the City at Mayor de Blasio's direction.

Also in July 2020, WFAF submitted a request to Mayor de Blasio to paint its own mural on a City street.[3] After receiving no response, WFAF sent a second request that was later denied by the DOT because "the NYC DOT does not permit installations on City roadways that are open to traffic." App'x at 33. On July 28, 2020, WFAF brought suit against defendants-appellees— former Mayor Bill de Blasio and former New York City Transportation Commissioner Polly Trottenberg, in their official capacities (collectively, "the City Defendants")—alleging that their denial of WFAF's request to paint a mural similar to the City's seven "Black Lives Matter" murals (together, the "Murals") deprived WFAF of its First Amendment rights in violation of 42 U.S.C. § 1983.[4]

---

[3] Specifically, WFAF sought "to paint a mural of [their] motto—'Engaging, Inspiring and Empowering Women to Make a Difference!'—on Fifth Avenue, or another similar street within the city's jurisdiction." App'x at 16.

[4] WFAF also sought a preliminary injunction ordering the City Defendants to allow WFAF to paint its own mural or, alternatively, enjoining defendants-appellees from painting any murals on City streets and requiring them to paint over the "Black Lives Matter" murals. The district court concluded that (i) WFAF had standing solely to seek an injunction ordering the City Defendants to allow WFAF to paint its own mural, not to refrain from painting any other murals, and (ii) WFAF failed to meet the standard necessary to obtain any such injunction. WFAF does not appeal the district court's denial of that injunction. We further note that WFAF's motion contained additional details about the Murals beyond those contained in the amended complaint. However, even if we were to consider these additional allegations, such allegations would not change the legal analysis herein.

3

The district court granted the City Defendants' motion to dismiss, concluding that the Murals constituted government—rather than private—speech and, thus, that WFAF's First Amendment claim that it was entitled to paint its own mural on the street failed as a matter of law. On appeal, WFAF challenges the dismissal of the amended complaint, arguing that the district court incorrectly concluded that (1) the Murals were government speech not subject to First Amendment regulation, and (2) WFAF had accordingly not alleged a *prima facie* case of viewpoint discrimination.

## DISCUSSION

We review *de novo* a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6), "accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021) (internal quotation marks omitted); *accord Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). Reviewing the amended complaint, we agree with the district court that WFAF failed to plead a plausible First Amendment claim. Instead, the facts alleged in the amended complaint demonstrate that the City Defendants engaged in government—not private—speech, and thus, WFAF's First Amendment claim fails as a matter of law.

The nature of the speech at issue is dispositive in this case. It is axiomatic that a government cannot regulate speech based upon its content or the message that it conveys. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015) (stating that any governmental restrictions on speech based on its "communicative content" are "presumptively unconstitutional" and subject to strict scrutiny). However, if a government "engag[es] in [its] own expressive conduct, then the Free Speech Clause has no application" because, while the First Amendment "restricts

4

government regulation of *private* speech," it does not restrict the *government's* speech. *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) (emphasis added); *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) ("[G]overnment statements (and government actions . . . that take the form of speech) do not normally trigger . . . First Amendment rules designed to protect the marketplace of ideas."). Thus, when the government speaks for itself, "it is not barred by the Free Speech Clause from determining the content of what it says," *Walker*, 576 U.S. at 207, and "is entitled to favor certain views over others," *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 34 (2d Cir. 2018).

To determine whether contested speech is government or private, the Supreme Court has identified three primary factors: (1) whether the medium has historically been used to "communicate[] messages from the States"; (2) whether the medium is "often closely identified in the public mind with the State," *i.e.*, whether it is reasonably interpreted as "conveying some message on the [government's] behalf"; and (3) whether the government maintains direct, editorial control over the message's content. *Walker*, 576 U.S. at 210–13, 219 (internal quotation marks and alteration omitted); *accord Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1589–90 (2022); *Summum*, 555 U.S. at 470–72; *Destito*, 879 F.3d at 34. Applying these factors to the allegations in the amended complaint, we conclude that the City Defendants' acceptance, creation, and preservation of the Murals—as well as their denial of WFAF's application to paint its own—were a prototypical exercise of government speech.

First, it is apparent that New York City has historically used this medium—*i.e.*, markings upon roadways—as a means to communicate with the public, whether through traffic signals, lane indicators, or street signs. In fact, as its various anti-graffiti laws make clear, the City exclusively

reserves the surfaces of its streets for government communication unless it grants specific approval to the contrary. *See* N.Y.C. Local Law § 10-117(a) (providing that "[n]o person shall write, paint or draw any inscription, figure or mark . . . of any type on any public or private building . . . or any other real or personal property owned, operated or maintained by . . . the city of New York" without express permission); N.Y.P.L. § 145.60 (criminalizing the painting of public property without permission).

Second, because of this historical communicative use, City streets are "closely identified in the public mind with the government unit that owns [them]." *Summum*, 555 U.S. at 472. Therefore, a reasonable person would assume that the City endorsed a message permanently painted upon its streets and interpret the Murals as an exercise of government speech, particularly where, as here, the City Defendants specifically broadcasted that the Murals were intended to "send[] a message that these are our values in New York City." App'x at 145. Indeed, the amended complaint contains multiple statements made by former Mayor de Blasio and other City employees announcing their intent to send a specific message through the Murals. App'x at 17 ("For all lives to matter, we must first make clear that black lives matter. That is why we approved the murals and met those words with action."); App'x at 17 ("This is about something much bigger than any one group . . . [t]his is about righting a wrong and moving forward."); App'x at 21 (same).

Third, the City Defendants exercised "editorial control" over the Murals. *Summum*, 555 U.S. at 472. For example, as alleged in the amended complaint, the Murals were painted "at the behest of Mayor Bill de Blasio"; New York City employees (including former Mayor de Blasio) participated in the creation of at least one mural; the DOT funded the creation of one mural; and

6

New York City employees "allowed" and "approved" "other duplicative murals." App'x at 15, 17. The City Defendants' denial of WFAF's application to paint its own mural only serves to demonstrate this point. Rather than accepting any request to paint any mural, the City "exercis[ed] final approval authority over their selection," thus "effectively controll[ing] the messages sent by the [Murals]." *Summum*, 555 U.S. at 473 (internal quotation marks omitted). In short, because the City "took ownership" of the Murals and displayed them on streets "that it owns and manages and that [are] linked to the City's identity," *id.* at 473–74, it clearly exercised control over their content.

WFAF scarcely attempts to dispute any of these points, instead arguing that: (1) because one mural (the Fulton Street Mural) "was painted without [City Defendants'] knowledge, consent, approval, or participation," it "could not have been the government's own speech," Appellant's Br. at 11; and (2) "even if the Black Lives Matter murals were found to constitute government speech, the defendants' imposition of [content-based] restrictions on the painting of such murals fails strict scrutiny," Appellant's Br. at 12. We find these arguments unavailing and address each in turn.

As to WFAF's contention regarding the Fulton Street Mural, we first note that there is no allegation in the amended complaint that any of the Murals were painted without the advance knowledge and approval of the City Defendants. To the contrary, the amended complaint cites a report stating that all of the Murals were "painted on sites throughout the city *at the behest* of Mayor Bill de Blasio." App'x at 15 (emphasis added). In any event, even assuming, *arguendo*, that a single mural was created entirely by private individuals, that does not, by itself, render it private speech. We recognize that "[i]f private speech could be passed off as government speech

7

by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints." *Matal v. Tam*, 137 S. Ct. 1744, 1758 (2017). However, it is also well established that, if the other factors as outlined above are satisfied, speech may be properly attributed to the government, even when private individuals were involved in its creation. *Summum*, 555 U.S. at 471–72; *Walker*, 576 U.S. at 210–13; *accord Destito*, 879 F.3d at 34. For instance, in *Summum*, the Supreme Court held that a city's acceptance of a privately created monument and the display of that monument in a city park were an exercise of government speech unregulated by the First Amendment, as the city had "effectively controlled the messag[ing]" delivered by the privately created artwork and assumed it as its own. 555 U.S. at 473 (internal quotation marks omitted). Here, as in *Summum*, even if the City did not itself paint one or more of the Murals, the amended complaint makes clear that the City Defendants accepted and preserved the Mural(s), using the privately created work(s) to engage in their own messaging. Therefore, based upon the allegations in the amended complaint, the City Defendants did not merely "affix[] a government seal of approval" on a privately created message, *Matal*, 137 S. Ct. at 1758, but instead, as their many statements made clear, they adopted the mural "for the purpose of presenting the image of the City that it wishe[d] to project to all," *Summum*, 555 U.S. at 472–73.

As to WFAF's second contention, that we should examine the Murals and the City Defendants' denial of WFAF's request as restrictions on speech in a traditional or designated public forum, such an examination would be inapposite. When the government is speaking for itself, the forum analysis simply does not apply. *Id.* at 480; *Walker*, 576 U.S. at 217 ("The fact that private parties take part in the design and propagation of a message does not extinguish the governmental nature of the message or transform the government's role into that of a mere forum-

8

provider."). In short, the City's propagation of its own message through the Murals did not convert the street surfaces into a public forum. Additionally, WFAF's reliance on the public forum cases involving streets is misplaced because of the differing use of the forum in the instant case. To be sure, a city street is a quintessential public forum for "purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (internal quotation marks omitted). However, as the district court noted, marching or gathering on a public street is constitutionally distinct from painting murals on them. *See Summum*, 555 U.S. at 478–79 (explaining that a park can constitute a public forum for some activities, such as "the delivery of speeches and the holding of marches and demonstrations," while not a forum for other activities, such as installing a permanent monument).

In sum, even accepting the allegations of the amended complaint as true and drawing all reasonable inferences in WFAF's favor, we conclude that the Murals were "meant to convey and have the effect of conveying a government message" and thus, the Murals are government, not private, speech. *Summum*, 555 U.S. at 472. Accordingly, the district court correctly held that WFAF's amended complaint failed to plausibly allege a First Amendment claim.

*         *         *

We have considered all of WFAF's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the order and judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9