24-826
*Mangrove Partners Fund, Ltd. v. Bristol-Myers Squibb Co., et al*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of May, two thousand twenty-four.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> PIERRE N. LEVAL,
> ALISON J. NATHAN,
> *Circuit Judges*.

_____

MANGROVE PARTNERS MASTER FUND, LTD., SM MERGER/ARBITRAGE, L.P., on behalf of themselves and all others similarly situated, SM INVESTORS L.P., on behalf of themselves and all others similarly situated, SM INVESTORS II, L.P., on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

EHAB KHALIL,

*Plaintiff-Movant-Appellant,*

MASO CAPITAL INVESTMENTS LIMITED, MASO CAPITAL ARBITRAGE FUND LIMITED, BLACKWELL PARTNERS LLC SERIES A, STAR V PARTNERS LLC,

*Plaintiffs*,

v.                                                    24-826

BRISTOL-MYERS SQUIBB COMPANY, GIOVANNI CAFORIO, VICKI L. SATO, PETER J. ARDUINI, ROBERT BERTOLINI, MATTHEW W. EMMENS, MICHAEL GROBSTEIN, ALAN J. LACY, DINESH C. PALIWAL, THEODORE R. SAMUELS, GERALD L. STORCH, KAREN H. VOUSDEN, CHARLES BANCROFT, KAREN M. SANTIAGO, SAMIT HIRAWAT,

*Defendants-Appellees*,

DAVID V. ELKINS,

*Defendant*.

_____

| | |
|---|---|
| For Plaintiffs-Appellants: | MICHAEL B. EISENKRAFT, Laura H. Posner, Benjamin F. Jackson, Brendan R. Schneiderman, Cohen Milstein Sellers & Toll, PLLC, New York, NY |
| | Steven J. Toll, Cohen Milstein Sellers & Toll PLLC, Washington, DC |
| For Defendants-Appellees: | JOHN J. CLARKE, JR., Jessica A. Masella, Steven M. Rosato, DLA Piper LLP, New York, NY |

Appeal from a judgment of the United States District Court for the Southern District of New York (Jesse M. Furman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Mangrove Partners Master Fund, Ltd., SM Merger/Arbitrage, L.P., SM Investors L.P., SM Investors II, L.P., and Ehab Khalil ("Plaintiffs") appeal from the February 29, 2024 judgment of the Southern District of New York (Furman, *J.*) dismissing Plaintiffs' second amended complaint (the "complaint") for failure to state a claim. In 2019, Bristol-Myers Squibb Company ("BMS") issued contingent value rights

2

("CVR") to Celgene stockholders as partial consideration in a merger between the two pharmaceutical companies. Each CVR entitled its holder to a $9 payment—$6.4 billion in total—provided that three of Celgene's then-pending drugs were approved by the Food and Drug Administration ("FDA") by specific deadlines. The FDA approved one of the three drugs, Liso-cel, after its deadline and so the CVRs expired worthless. Plaintiffs, who seek to represent a class of those who purchased or otherwise acquired CVRs between November 20, 2019 and December 31, 2020, allege that BMS and a group of current and former BMS executives [1] and directors [2] ("Defendants") violated the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), and Securities and Exchange Commission Rules promulgated thereunder by making materially false statements regarding the value of the CVRs and the likelihood of them being paid out. According to the allegations of the complaint, the statements were false because they failed to disclose allegedly intentional steps taken by BMS to slow down the regulatory approval process in order to avoid having to pay $6.4 billion to the owners of the CVRs. Plaintiffs argue on appeal that the district court erred by (1) dismissing the claims under Sections 11 and 12(a)(2) of the Securities Act and Section

---

[1] The BMS executives named in the complaint are CEO Giovanni Caforio, Executive Vice President, Chief Medical Officer Samit Hirawat, former CFO Charles Bancroft, and former Principal Accounting Officer Karen M. Santiago.

[2] BMS directors named in the complaint include Vicki L. Sato, Peter J. Arduini, Robert Bertolini, Matthew W. Emmens, Michael Grobstein, Alan J. Lacy, Dinesh C. Paliwal, Theodore R. Samuels, Gerald L. Storch, and Karen H. Vousden.

14(a) of the Exchange Act on the grounds that they were barred by the Private Securities Litigation Reform Act ("PSLRA") safe harbor provisions; (2) dismissing the claims under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder for failure adequately to plead scienter; (3) dismissing the "controlling person" claims under Section 15 of the Securities Act and Section 20(a) of the Exchange Act for failure to plead a primary violation; and (4) denying Plaintiffs leave to amend their complaint again. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to **AFFIRM**.

\*　　\*　　\*

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021) (internal quotation marks omitted). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I.　　PSLRA Safe Harbor

Plaintiffs' claims under Sections 11 and 12(a)(2) of the Securities Act and Section 14(a) of the Exchange Act and Rule 14a-9 all arise from statements included in a

registration and proxy statement (the "Joint Proxy") jointly issued by BMS and Celgene in support of their merger agreement. Section 11 prohibits materially misleading statements or omissions in registration statements filed with the SEC. 15 U.S.C. § 77k(a). Section 12(a)(2) prohibits offering or selling a security via a prospectus containing an untrue statement of material fact or that omits a material fact. 15 U.S.C. § 77l(a)(2). Section 14(a) and Rule 14a-9 promulgated thereunder prohibit the dissemination of proxy statements that are false or misleading with respect to any material fact or omit to state a material fact. 15 U.S.C. § 78n(a)(2); 17 C.F.R. § 240.14a-9(a). The PSLRA safe harbor can apply to claims brought under Sections 11, 12(a)(2), and 14(a).[3] 15 U.S.C. §§ 77z-2(a), 78u-5(a).

We agree with the district court that these statements are not actionable. The challenged passages in the Joint Proxy consisted of statements of (1) the date Liso-cel was expected to launch; (2) that BMS had estimated at 45% the probability of achieving the FDA approvals in time; (3) the value of each CVR assuming timely FDA approvals; (4) that BMS had agreed to make "diligent efforts" to achieve the CVR milestones; and (5) that the $9 value of the CVRs was speculative. Joint App'x 308, 1070-71. None of these statements was false. "To be actionable, of course, a statement must . . . be misleading." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988).

---

[3] The Securities Act safe harbor applies to the Section 11 and 12(a)(2) claims. 15 U.S.C. § 77z-2(a). The Exchange Act safe harbor applies to the Section 14(a) claims. 15 U.S.C. § 78u-5(a). The two safe harbor provisions are substantively identical. *Compare* 15 U.S.C. § 77z-2(c), *with* 15 U.S.C. § 78u-5(c).

Additionally, the PSLRA safe harbor provisions shield defendants from liability for forward-looking statements when "(1) 'the forward-looking statement is identified and accompanied by meaningful cautionary language,' (2) the forward-looking statement 'is immaterial,' or (3) 'the plaintiff fails to prove that [the forward-looking statement] was made with actual knowledge that it was false or misleading.'" *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245 (2d Cir. 2016) (quoting *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010)).

Forward-looking statements include those containing "projection[s] of revenues . . . or other financial items," "plans and objectives of management for future operations," and discussions of "future economic performance." 15 U.S.C. §§ 77z-2(i)(1); 78u-5(i)(1). Some of the alleged misstatements in the Joint Proxy are forward-looking within these parameters. Each such statement concerns either "plans and objectives of management for future operations" or "future economic performance." 15 U.S.C. §§ 77z-2(i)(1); 78u-5(i)(1). Indeed, statements about prospective FDA drug approval are by their nature quintessentially forward looking. *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 535 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).

However, the safe harbor provisions require more than just that a statement be forward-looking. One way a defendant can be shielded from liability for forward-looking statements is when they are accompanied by "meaningful cautionary language."

6

*In re Vivendi*, 838 F.3d at 247. For this prong of the safe harbor to apply, "defendants must demonstrate that their cautionary language was not boilerplate and conveyed substantive information." *Id.* (internal quotation marks omitted). The language must describe "factors that realistically could cause results to differ materially from those projected in the forward-looking statement[s]." *Slayton*, 604 F.3d at 771. The Joint Proxy here contains detailed and extensive warnings related to the CVRs. For example:

- "If the CVR milestone . . . is not achieved *for any reason* . . . the CVRs will expire valueless." Joint App'x 201 (emphasis added).

- "[T]he timing and probability of a payment pursuant to the contingent value right consideration . . . are based on management's estimates, assumptions and projections and are subject to significant uncertainties and other factors, many of which are beyond Bristol-Myers Squibb's and Celgene's control . . . . includ[ing] . . . the content and timing of decisions made by the FDA and other regulatory authorities." Joint App'x 231.

These cautionary statements are not mere boilerplate and meaningfully conveyed that results could differ materially from that which the Joint Proxy projected.

Plaintiffs argue that the statements in the Joint Proxy are nonetheless outside the safe harbor's protection because the Defendants had a then present intent to deliberately slow-roll Liso-cel's approval. But the complaint fails plausibly to allege that any Defendant had actual knowledge that such a scheme existed or knew that a material statement was false. *See Slayton*, 604 F.3d at 773 (explaining that the safe harbor provisions also require dismissal if plaintiffs fail to allege actual knowledge that a forward-looking statement is false or misleading—a stricter standard than applied to

7

statements of current fact).   Conclusory assertions like those made by Plaintiffs do not deprive a forward-looking statement of safe harbor protection particularly when, as here, the statement was accompanied by ample cautionary language.[4]

Accordingly, the district court did not err in concluding that the PSLRA safe harbor applies to some of the claims brought under Section 11 and 12(a)(2) of the Securities Act and Section 14(a) of the Exchange Act and Rule 14a-9.   As for the statements that were not forward looking, they were not false.

## II.   Section 10(b) and Rule 10b-5 Claim

Plaintiffs next contend that the district court improperly dismissed their claims under Section 10(b) of the Exchange Act and Rule 10b-5, which are based on public statements made by BMS's then-CEO Giovanni Caforio and Executive Vice President, Chief Medical Officer Samit Hirawat, for failure adequately to allege scienter.   We disagree.

To plead scienter adequately, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."   15 U.S.C. § 78u-4(b)(2).   For securities fraud, that state of mind is "a mental state embracing intent to deceive, manipulate, or defraud."   *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551

---

[4] Nor do we find merit in Plaintiffs-Appellants' argument, raised for the first time on appeal, to the effect that the alleged misstatements in the Joint Proxy are omissions to which the safe harbor does not apply.   *See Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.").

U.S. 308, 319 (2007) (internal quotation marks omitted). Scienter can also be satisfied by "conscious recklessness," which is a state of mind "approximating actual intent, and not merely a heightened form of negligence." *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000). It is insufficient to "set out 'facts from which, if true, a reasonable person *could* infer that the defendant acted with the required intent,' for that gauge 'does not capture the stricter demand Congress sought to convey in [the PSLRA].'" *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110–11 (2d Cir. 2009) (quoting *Tellabs*, 551 U.S. at 314). Rather, the PSLRA requires a plaintiff to plead facts leading to "an inference of scienter [that is] more than merely plausible or reasonable—it *must be cogent and at least as compelling as any opposing inference of nonfraudulent intent*." *Id.* at 111 (quoting *Tellabs*, 551 U.S. at 314). A plaintiff may satisfy the scienter pleading requirements by either "alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Plaintiffs have done neither.

**Motive and Opportunity.** To successfully allege scienter based on motive and opportunity, a plaintiff must plausibly plead that the defendant "benefitted in some concrete and personal way from the purported fraud." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (internal quotation marks omitted). "Motives that are common to most corporate officers" are insufficient for the

9

purposes of this inquiry. *Id.* at 198. Here, Plaintiffs suggest three potential motives in their effort to allege scienter, all of which are foreclosed by precedent.

First, Plaintiffs argue that BMS was struggling financially after its merger with Celgene and Defendants were thus motivated to avoid the $6.4 billion CVR payout to appear profitable. But we have repeatedly held that a "desire for the corporation to appear profitable . . . do[es] not constitute 'motive'" for purposes of establishing scienter. *Id.* at 198; *see also New England Carpenters Guar. Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 177–78 (2d Cir. 2023) ("[T]he desire to sustain the appearance of corporate profitability is not itself the kind of incentive or motivation that raises an inference of scienter." (internal quotation marks omitted)); *S. Cherry St.*, 573 F.3d at 109 (similar); *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (similar).

Second, Plaintiffs contend that Caforio was in danger of being fired due to the poor performance of BMS stock. Here too, we have held that the desire of executives "to prolong the benefits of the positions they hold" is insufficient to plead scienter. *Rotunno v. Wood*, No. 22-502, 2022 WL 14997930, at *2 (2d Cir. Oct. 27, 2022) (summary order) (quoting *Kalnit*, 264 F.3d at 139); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994) (allegations that "merely charge that executives aim to prolong the benefits of the positions they hold" are insufficient general motives).

Finally, Plaintiffs suggest that we can infer motive based on Defendants' decision not to purchase CVRs on the open market during the class period. But only allegations

10

of "unusual stock trades" on the part of insiders can give rise to "an inference of bad faith or scienter." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022) (internal quotation marks omitted). The complaint does not allege any affirmative trading activity in BMS securities by Defendants. And an absence of trading activity—easily explicable in terms of either a belief that the risk of buying back CVRs outweighed the benefits or a desire to avoid the appearance of impropriety by trading on asymmetric information—is not "unusual" trading activity sufficient to demonstrate motive.

**Strong Circumstantial Evidence**. Plaintiffs next contend that they have pleaded scienter by offering "strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99. Plaintiffs focus their arguments on a series of missteps that plagued the Liso-cel approval process. Plaintiffs contend that these missteps, which ultimately led to Liso-cel missing its CVR deadline by over a month, are only explicable by a deliberate plan to slow-roll Liso-cel. Plaintiffs then urge that Defendants knew or should have known about this plan principally because (1) employees at BMS were in communication with the FDA about issues in the Liso-cel application, and (2) some Defendants were members of BMS board subcommittees with oversight responsibility of the Celgene product line. We again disagree.

Plaintiffs plausibly assert, at most, that Defendants knew there were issues with the Liso-cel approval process. Plaintiffs have not alleged strong circumstantial evidence that Defendants knew or should have known that these missteps were in fact not missteps

11

at all, but part of a concealed plan to thwart that process. As we have repeatedly said, when a plaintiff "cannot make the 'motive' showing . . . 'the strength of the circumstantial allegations must be correspondingly greater.'" *ECA*, 553 F.3d at 198-99 (quoting *Kalnit*, 264 F.3d at 142). The inference of scienter must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 198 (quoting *Tellabs*, 551 U.S. at 314). Plaintiffs have not met this pleading standard.

Weighing the "inferences urged by the [P]laintiff[s]" against "competing inferences rationally drawn from all the facts alleged," a reasonable person would not deem the inference of scienter at least as strong as the opposing inference. *Id.* Based on the complaint's allegations, the more compelling inference is that Defendants—in integrating Celgene research lines and personnel into BMS operations, setting up a new biologic manufacturing facility, and navigating the effects of the COVID-19 pandemic on both BMS and the FDA—experienced setbacks caused or aggravated by mismanagement that delayed the Liso-cel approval process. And Plaintiffs' statistical analysis demonstrating that the Liso-cel approval may have been anomalously long, even for biologic drugs approved during the pandemic, is not inconsistent with this inference. Especially in view of the allegations of the complaint acknowledging that BMS underestimated the time needed to fix problems at the Juno and Lonza facilities, we

conclude that the Plaintiffs' hypothesis is not as probable as the Defendants' innocent explanation.

**Corporate Scienter.** When a defendant is a corporation, a plaintiff may plead corporate scienter by alleging "facts that give rise to a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) (internal quotation marks omitted). In "exceedingly rare instances" a statement may be "so 'dramatic' that collective corporate scienter may be inferred" without naming any individual who concocted and disseminated the fraud. *Id.* at 99; *see also Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) ("[I]t is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud." (internal quotation marks omitted)).

The complaint does not adequately plead corporate scienter either. Plaintiffs argue that they have pleaded corporate scienter because BMS Vice President Maria Brown, Senior Vice President Jackie Elbonne, and Senior Vice President Jocelyn Seymour were directly involved in corresponding with the FDA about Liso-cel; because Vice President Snehal Patel was responsible for preparing one of the Liso-cel production sites for FDA inspection; and because Vice President Maria Brown attended a meeting with the FDA about deficiencies relating to Liso-cel's manufacturing facilities. Plaintiffs' allegations again suggest these individuals were aware of setbacks in the Liso-cel

13

approval process, not that they were aware of a deliberate plan to slow-roll regulatory approval.

### III.    Leave to Amend

Finally, we review the denial of leave to amend for abuse of discretion, unless the denial was based, as here, "on an interpretation of law, such as futility, in which case we review the legal conclusion *de novo*." *Panther Partners Inc. v. Ikanos Comm'n, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).   Plaintiffs argue the district court erred in denying leave to amend because they have pending Freedom of Information Act requests at the FDA and the Center for Biologics Evaluation and Research.   Plaintiffs offer no explanation of what information they requested or explain how receiving such information may help supplement their allegations.   *See Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 108 (2d Cir. 2022).   Accordingly, we affirm the district court's denial of leave to amend. [5]

*     *     *

---

[5] In order to plead control person liability under Section 15 of the Securities Act or Section 20(a) of the Exchange Act, a plaintiff must show, *inter alia*, a primary violation by the controlled person. *See Ark. Pub.*, 28 F.4th at 356–57; *In re Lehman Bros. Mortgage-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011). Because we affirm the district court's dismissal of all primary violations, and also its decision denying leave to amend, we affirm the dismissal of the control person claims for failure to allege a primary violation.

We have considered Plaintiffs' remaining arguments and find them to be without merit.   Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk